UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:15-CR-87-DCR-REW-1 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| SAMUEL A. GIROD, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court considers a motion to dismiss and *in limine* by Defendant Girod.[1] DE #45 (Motion). The United States responded in opposition, DE #49 (Response), and Girod replied. DE #51 (Reply). The motion is baseless, and Judge Reeves should fully deny it. As explained, most of the arguments hinge on matters for the jury's determination at trial. Others present groundless legal contentions. The trial evidentiary issues also, at least at this point, warrant no relief for Girod.

Girod faces a series of charges that center on alleged violations of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, and his interactions with FDA investigators. He stands accused of conspiring to prevent FDA officers from fulfilling their duties (Count 1), obstructing a pending federal proceeding (Count 2), and grand jury witness intimidation (Count 12). Regarding the Act, he is accused in Counts 3-11 of introducing in interstate commerce misbranded FDCA "drugs" in violation of the Act's registration and labelling laws. After being represented for part of the case, Girod elected

---

[1] The Court gives proper latitude to Girod, who is *pro se*. *See United States v. McKinney*, 375 F. App'x 479, 481 (6th Cir. 2010) ("We do not require a *pro se* party to meet the same standards in the presentation of his argument as we apply to attorneys.").

1

to proceed *pro se* in April 2016. *See* DE #46 (Minute Entry). The case is set for a July 2016 trial.

In the sweeping motion, Girod attacks the Government's case on multiple fronts. The Court has carefully considered the briefing and **RECOMMENDS** that Judge Reeves **DENY** DE #45 in in its entirety.

A.  *Motion to Dismiss*

Girod in some ways fundamentally misunderstands the import of Rule 12. That Rule offers a limited vehicle for attacking an indictment pre-trial. Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine *without a trial on the merits*." (emphasis added)). Certainly, structural or fundamental defects in charge or indictment issuance properly fall within the Rule's ambit. *Id.* 12(b)(3)(A) & (B). However, any argument that essentially seeks a motion-based determination of the issues assigned for trial asks too much. *See, e.g.*, *United States v. Hann*, 574 F. Supp. 2d 827, 830 (M.D. Tenn. 2008) ("An indictment that is valid on its face may not be dismissed on the ground it is based on inadequate or insufficient evidence. Therefore, a court cannot consider a factual challenge to an indictment purporting to show a defect consisting solely of insufficient evidence to prove a particular charge." (citing *United States v. Williams*, 112 S. Ct. 1735, 1746 (1992)). The Rule is not a substitute for or vehicle for avoiding trial of the case.[2]

---

[2] Girod does not attack the validity of the Indictment's formulation, elemental completeness, or structure. As the Government argues, the Indictment likely is adequate under the *Russell* standards, which Girod does not put into play here. *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (noting constitutional minima of indictment as (a) notice of "all of the elements of the charged offense and . . . notice . . . of the charges" and (b) sufficient detail to enable a double jeopardy plea, if later applicable); *United States v. Lentsch*, 369 F.3d 948, 952 (6th Cir. 2004) (discussing same in

2

The Court, endeavoring to account for all of Girod's enumerated complaints, groups the theories as ones related to proper agency process, standing, legal authority/matters for trial, and grand jury proceedings.

1. Agency process

Girod makes several arguments, tethered to the general concept of due process, that hinge on the FDA's role in the prosecution. None has merit.

First, Girod contends that the prosecution fails because he did not receive a prior administrative hearing under 5 U.S.C. § 554. That section, within the Administrative Procedure Act, regulates the executive branch hearing process. It does not apply to a criminal prosecution in a United States District Court, which is not an "agency hearing." The statute "applies, according to the provisions thereof, in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing[.]" 5 U.S.C. § 554; *see also id.* § 551(1)(B) (definition of "agency" does *not* include the federal courts); *id.* § 551(7) ("'adjudication' means *agency* process for formulation of an order" (emphasis added)); Girod simply misunderstands the impact of the APA on this prosecution.

Second, Girod argues that the FDA failed to comply with 21 U.S.C. § 335, a curious statute requiring a form of pre-referral meeting in advance of criminal prosecution. The Supreme Court has determined expressly that the statute's mechanism, giving a suspect an "opportunity to present his views," "is not a prerequisite to

---

Information context: "An information 'adequately charges an offense if it (1) includes the elements of the offense intended to be charged, (2) notifies the defendant of "what he must be prepared to meet," and (3) allows the defendant to invoke a former conviction or acquittal in the event of a subsequent prosecution.'" (quoting *United States v. Cor-Bon Custom Bullet Co.,* 287 F.3d 576, 579 (6th Cir.2002))).

3

prosecution." *United States v. Dotterweich*, 64 S. Ct. 134, 135 (1943); *U.S. v. Andreadis*, 234 F. Supp. 341, 347 (E.D.N.Y. 1964) ("Section 335 does not require an informational hearing pursuant to its provisions before the institution of a criminal proceeding."). Whatever the surface appeal of the statute's verbage, binding precedent forecloses Girod's theory.

    2. Standing

Girod next suggests the FDA does not have "standing" in this case because the items targeted in the Indictment are not, in fact, "drugs." *See infra* section A.3 (discussing definition of "drugs"). However, Girod misperceives standing in at least two ways. First, "standing," as Girod casts it, is primarily a civil construct that signifies a party's right to sue or assert a claim. This is a criminal prosecution in which the United States seeks to enforce criminal laws governing the nation. The standing of the United States to enforce the federal criminal laws is inarguable. *See Rice v. Farley*, No. 14-31-ART, 2014 WL 2441260, at *2-3 (E.D. Ky. May 30, 2014) (analyzing criminal standing, noting that public rights enforcement, such as criminal prosecution, falls under the Article III "case" definition, and stating: "While individualized injury is necessary for private plaintiffs to have standing in private litigation, 'diffuse injuries to the general public' are enough to create standing between the public (the government) and criminal defendants."). Second, the FDA is the investigative arm of the executive branch involved in the case and has jurisdiction over the FDCA. *See* 21 U.S.C. § 393; *see also id.* §§ 360(b)(1), 374. Further, federal district courts have jurisdiction over any federal crimes pursuant to 18 U.S.C. § 3231, which does not depend or hinge on the FDA's involvement or non-involvement in the case. As such, the Court rejects "standing" as a basis for relief.

3. <u>Legal authority and trial matters</u>[3]

Girod proffers various fact-tinged arguments for relief that are not available under the limited Rule 12 formulation. To the extent he advocates factual issues—such as, whether an item is a "drug" or whether acts constituting obstruction occurred—those must await resolution via "trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also United States v. Cumberland Wood and Chair Corp.*, Nos. 91-6058 to 91-6060, 1992 WL 317175, at *3 (6th Cir.  1992) ("However, if a defendant's pretrial motion requires the court to find facts that make up the elements of the case which would normally be reserved to the jury on trial of the general issue, the motion should be denied.").

Defendant points to various lab results purportedly denying the presence of drugs. The reports may be a part of the jury assessment at trial, but importantly, the meaning of an FDCA drug turns as much on intent as on chemistry. The statute defines a "drug," in pertinent part, as follows:

> (A) articles recognized in the official United States Pharmacopœia, official Homœopathic Pharmacopœia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C).

21 U.S.C. § 321(g)(1). Girod is accused of violating registration requirements and of trafficking in interstate commerce substances defined as "drugs" under the FDCA, particularly because of how Girod labelled the items or *intended* the substances to operate. *See United States v. Articles of Drug for Veterinary Use*, 50 F.3d 497, 500 (8th

---

[3] Girod cites the Old Testament and other biblical passages as a basis for relief. Judeo-Christian tradition has undoubtedly contributed to the law in America, but The Bible does not itself provide rights or regulate evidence in the United States Courts.

5

Cir. 1995) (citing the FDCA definition of "drug" excerpted above and stating: "This statutory definition indicates that whether a product is a drug depends on its intended application" (quotation marks and citations omitted)); *United States v. Storage Spaces Designated Nos. 8 and 49 Located at 277 East Douglas, Visalia, Cal.*, 777 F2d 1363, 1366 (9th Cir. 1985) ("The vendor's intent is the key element in this statutory definition."). Further, alleged promotional material and/or labelling potentially contributes to the analysis. *See Nat'l Nutritional Foods Ass'n v. Mathews*, 557 F.2d 325, 334 (2d Cir. 1977) ("In determining whether an article is a 'drug' because of an intended therapeutic use, the FDA is not bound by the manufacturer's subjective claims of intent but can find actual therapeutic intent on the basis of objective evidence. Such intent also may be derived or inferred from labeling, promotional material, advertising, and any other relevant source." (quotation marks and citations omitted)); *see also* 21 C.F.R. § 201.128 ("[O]bjective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives.").

Girod cannot truncate the process by pointing to lab conclusions. Whether the FDCA here applies, and whether Girod violated registration and labelling requirements, will hinge on jury findings regarding FDCA definitions and elements, all at the conclusion of a trial on the merits. The questions include whether the registration requirement (21 U.S.C. § 360(b)(1), (c)(1)) applied; whether the substances at issue in the Indictment qualified as "drugs" (21 U.S.C. § 321(g)(1)); whether any drugs were misbranded (21 U.S.C. § 352(e), (f), (o), (j)); and whether Girod thus engaged in prohibited acts (21 U.S.C. § 331(a)). Again, each question requires answers via trial.

6

Movant's attacks on other counts likewise must await resolution by trial. He rhetorically questions "how does one Amish man surround two federal agents?" DE #45, at 5. This is a factual point ill-suited to Rule 12 practice. It also ignores that Count 1 charges *conspiracy* under 18 U.S.C. § 372.

4. Grand Jury concerns

Girod raises several issues regarding the Grand Jury.

First, he notes that the foreperson did not sign the Indictment. That is inaccurate. The original Indictment returned to the Court is signed. *See* DE #1-1 (Unredacted Indictment). The Court, per the District's Jury Plan and Judicial Conference Policy, redacts the name of the foreperson from public documents. The Defendant is entitled to see a signed version and may request permission from the Clerk to view the unredacted document.

Second, Girod criticizes or raises doubts concerning the basis for the Indictment or the fairness of the Government's presentation to the Grand Jury. The probable cause finding by the grand jury is itself inviolate. *See Kaley v. United States*, 134 S. Ct. 1090, 1097-98 (2014) ("[T]he whole history of the grand jury institution demonstrates that a challenge to the reliability or competence of the evidence supporting a grand jury's finding of probably cause will not be heard. The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." (quotation marks and citations omitted)). The process is largely secret, per Rule 6, but Rule 16 does assure Girod will have access to proper discovery, as defined by that rule, for use at trial. Further, Rule 26.2 and the Jencks Act, on precise terms, protect specific access to witness statements, including grand jury

7

testimony. Girod does not have a right to re-litigate or impeach the factual basis for the Grand Jury's decision to indict.[4]

B.  *In limine and other issues*

Girod's multiple *in limine* requests invalidly raise bias and target prosecution advocacy, terms of art, and word choice. The Court divides the requests into two general categories. First, Girod cites various bias issues concerning perceived FDA officers and/or chemists. To the extent a witness that testifies (or is a hearsay declarant) is biased, Girod can, under Judge Reeves's regulation, offer proper impeachment evidence at trial. Fed. R. Evid. 607. The United States denies that any of the persons named will be witnesses, suggesting the issue is moot. No ground exists for *in limine* relief.[5]

Second, Girod argues that the Court should bar the prosecution from using various words or phrases at trial. These include direct statutory terms of import (like "drug," "establishment," "misbranded," "operate," "product") as well as terms of identification or geography relevant to the case (such as Girod's full name and his physical address). The Rules of Evidence and proper advocacy will govern the trial. Girod offers nothing to suggest a meaningful or legitimate basis for proscribing use of the terms at issue. Girod may make a more particular objection in the context of trial, but on

---

[4] There are arguments a defendant can make about the validity of grand jury proceedings (relative to jury composition and selection), but the Court does not perceive Girod to be making any such claim here. *See* Fed. R. Crim. P. 6(b); 28 U.S.C. § 1867(a). He also does not request or show a basis for access to protected Rule 6 information under Rule 6(e)(3)(E)(ii).

[5] Nor can Girod, by this motion, re-litigate the Missouri injunction (Indictment, ¶ 14). Whether and how that injunction impacts the case will be decided at trial, but Girod's bias claims evidently target persons involved in the Missouri matter, not witnesses for the proceedings in this District.

this record, the Court recommends no relief. Girod fails to show that any of the terms are facially prejudicial in any undue or unfair way.[6]

C.      *Conclusion*

For the foregoing reasons, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion (DE #45) in its entirety.

\* \* \* \* \*

The Court issues this recommendation under 28 U.S.C. § 636(b)(1)(B). As defined by section 636(b)(1) and Rule 59(b), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with the Rule waives a party's right to review.

This the 8th day of June, 2016.



Signed By:
Robert E. Wier   REW
United States Magistrate Judge

---

[6] The prosecution may or may not prove its case, but the Court must allow the prosecution to employ the basic language and nomenclature of the statute, against the person and in the locations targeted, in attempting to establish the assertions and crimes included in the Indictment.

9