UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 15-87-DCR |
| ) | |
| V. ) | |
| ) | |
| SAMUEL A. GIROD, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the motion *in limine* filed by Defendant Samuel Girod. [Record No. 59] In his motion, the defendant seeks to exclude the opinion testimony of the United States' expert witness, Dr. Jane E. Liedtka. The witness has demonstrated that she is qualified as an expert and that her opinions are sufficiently relevant and reliable to meet the requirements of Rule 702 of the Federal Rules of Evidence. As a result, Girod's motion *in limine* will be denied. Dr. Liedtka will be permitted to testify during the trial in a manner consistent with the matters outlined in her report and declaration.

**I.**

The Indictment charges that Girod operated an establishment that manufactured and marketed products for the treatment of skin disorders, cancer, sinus infections, and other ailments. [Record No. 1, ¶ 1] During the relevant time period, the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, required persons operating establishments engaged in the manufacturing, preparation, propagation, compounding, or processing of a drug to

register annually. *See* 21 U.S.C. § 360(b)(l), (c)(l). [*Id.*, ¶ 3] However, Girod did not register his establishment with the Food and Drug Administration ("FDA"). [*Id.*]

According to the Indictment, Girod manufactured and distributed "Chickweed Healing Salve." The product's label and corresponding pamphlets informed users that the product treated skin disorders, skin cancer, diaper rash, and fungus infections. [*Id.*, ¶ 4] In addition, Girod manufactured and distributed "TO-MOR-GONE," labeled as "black salve" and a "natural herbal remedy." [*Id.*, ¶ 5] That product purported to treat warts, moles, and skin growths, such as tumors. [*Id.*] An extract of the "bloodroot plant" appeared in that product, and the Indictment charges that such an ingredient is an "escharotic agent" due to its caustic, corrosive effect on the skin. [*Id.*] Further, Girod manufactured and distributed "R.E.P.," which purported to treat sinus infections, cold symptoms, sore throats, and bad breath. [*Id.*, ¶ 6]

Around September 17, 2013, the United States District Court for the Western District of Missouri enjoined and restrained Girod from manufacturing, processing, packaging, labeling, holding, selling, or distributing the aforementioned and similar products until various conditions were met. [*Id.*, ¶ 14] However, the defendant allegedly continued to manufacture, market, and distribute in interstate commerce those products without complying with the conditions. [*Id.*, ¶ 16]

On October 1, 2015, Girod was charged with twelve counts related to the events outlined above. First, he was charged with conspiring to prevent by force, intimidation, and threat, certain FDA officers from discharging their duties on November 21, 2013, in violation of 18 U.S.C. § 372. [*Id.*, ¶ 18] Count 2 charges that, on the same day, Girod obstructed the due administration of justice in violation of 18 U.S.C. § 1505. [*Id.*, ¶ 24] The third count charges that, in September 2013 and continuing through July 2015, the defendant, with the

intent to defraud or mislead, operated an unregistered establishment where he manufactured, prepared, propagated, and processed salves in violation of 21 U.S.C. §§ 33l(p) and 333(a)(2). [*Id.*, ¶ 26]

Next, Count 4 alleges that, on or about September 27, 2013, Girod introduced into interstate commerce a misbranded salve in violation of of 21 U.S.C. §§ 33l(a) and 333(a)(2). [*Id.*, ¶ 28] Counts 5 through 11 involve similar misbranding allegations.  Finally, the last count charges that, on or about December 15, 2014, Girod knowingly threatened, attempted to threaten, and attempted to corruptly persuade an individual to withhold records from a federal grand jury proceeding in violation of  18 U.S.C. § 1512(b)(2)(A).  [*Id.*, ¶ 44]

This matter is currently set for trial beginning July 26, 2016.  [Record No. 46]  Girod has submitted several motions, including the present construed motion *in limine*, which he titled "Opposition to Expert Witness Jane E. Liedtka."  [Record No. 59]  In his motion, the defendant seeks to exclude Dr. Liedtka's testimony because: (i) she improperly intends to address 21 U.S.C. § 321(g)(1)(B);  and (ii) her testimony concerning escharotic agents is irrelevant and unduly prejudicial.[1]

## II.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

---

[1]   The defendant also asserts that the Indictment should be dismissed if information regarding the absence of escharotic agents in the products he sold was not presented to the grand jury. [Record No. 59, ¶ 12]  The Court will address Girod's motion to dismiss the Indictment [Record No. 45] in another Memorandum Opinion and Order; however, it notes that it may not question an Indictment that is valid on its face, and that the prosecution is entitled to withhold evidence from the grand jury.  *See United States v. Williams*, 504 U.S. 36, 53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.").

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Rule reflects the Supreme Court's holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment). In *Daubert*, the Court explained that Rule 702 is intended to provide a flexible framework for deciding whether expert testimony is sufficiently reliable for presentation to the jury. 509 U.S. at 594; *see also United States v. Jones*, 107 F.3d 1147, 1156 (6th Cir. 1997) (finding that the trial judge still serves an important gatekeeping role after *Daubert*, requiring him to determine whether evidence is not only relevant, but also reliable). While trial court judges serve as evidentiary gatekeepers, rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendment).

As the Sixth Circuit explained in *In re Scrap Metal Antitrust Litigation*, a proposed expert's opinion testimony is admissible, at the district court's discretion, if three requirements are met: (1) the witness must be qualified by "knowledge, skill, experience, training, or education;" (2) the testimony must be relevant; and (3) the testimony must be reliable. 527 F.3d 517, 529 (6th Cir. 2008) (citing Fed. R. Evid. 702).

### III.

Girod does not take issue with the expert's qualifications.[2] Nor does he contend that her methods and report are unreliable. Instead, the defendant asserts that Dr. Liedtka's purported testimony is irrelevant and unduly prejudicial. *See* Fed. R. Evid. 401−403; 702. [Record No. 59, pp. 1−2] Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and if the fact is of consequence in determining the action. Fed. R. Evid. 401(a)−(b). Expert testimony is relevant under Rule 702 and *Daubert* if it will assist the trier of fact to better understand the evidence or to decide a material fact in issue. *See In re Scrap Metal*, 527 F.3d at 529. However, the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger" of unfair prejudice or of misleading the jury. Fed. R. Evid. 403.

Girod first argues that Dr. Liedtka's testimony regarding Title 21 of the United States Code is irrelevant because Girod he unable to use provisions within that section to obtain a dismissal of the Indictment.[3] [Record No. 59, p. 1] The Court notes that it has not yet rendered a decision regarding Girod's motion to dismiss. [*See* Record No. 61.] In any event, Girod's

---

[2] Dr. Liedtka's professional experience includes work as: (i) a medical officer at the FDA; (ii) a clinical dermatologist for University Dermatology Associates; (iii) a volunteer dermatology clinical center staff member at the National Institute of Health; (iv) a courtesy staff member and assistant professor at George Washington University; and (v) a general medical officer for the South Weymouth Naval Air Station. [Record No. 48-1, p. 2] The substance of her expected testimony appears to be based on several reliable publications. [Record No. 48-2, pp. 2−3, 7−8] Further, Dr. Liedtka has reviewed study protocols and reports for dermatology drugs and non-drug products; viewed patients with numerous skin conditions; and performed clinical research regarding dermatological issues. [Record No. 48-3, ¶¶ 3, 4, 6]

3  Girod's objections seem to revolve around Dr. Liedtka's "declaration" [Record No. 48-3], rather than her report. [Record No. 48-2] Therefore, the Court primarily addresses the admissibility of the proposed opinions in the declaration.

argument is not persuasive. Although he does not reference a particular provision in Title 21, he is likely referring to 21 U.S.C. § 335. This section states that:

> [b]efore any violation of this chapter is reported by the Secretary to any United States attorney for institution of a criminal proceeding, the person against whom such proceeding is contemplated shall be given appropriate notice and an opportunity to present his views, either orally or in writing, with regard to such contemplated proceeding.

21 U.S.C. § 335. However, the Supreme Court has held that compliance with § 335 is "not a prerequisite to prosecution." *United States v. Dotterweich*, 320 U.S. 277, 279 (1943). In other words, Subchapter III of Title 21 of the United States Code applies to the investigation of Girod's conduct and corresponding proceedings; however, the Supreme Court has interpreted § 335 differently from Girod.[4] Consequently, Girod fails to establish that Dr. Liedtka's testimony concerning Title 21 -- in particular, 21 U.S.C. § 321(g) -- is irrelevant. Her opinion that the TO-MOR-GONE materials demonstrate an intent "to be used in the diagnosis, cure, mitigation, treatment, or prevention of disease in man" is relevant to the jury's determination regarding whether the product is a "drug" under 21 U.S.C. § 321(g).[5] *See* Fed. R. Evid. 401. [Record No. 48-3, ¶¶ 10−12] Additionally, Dr. Liedtka's testimony will assist the trier of fact

---

[4] Further, with respect to the contention that either all of Title 21 must apply to Girod's conduct or none of it should apply, the conclusion does not follow from the premise.

[5] Although not raised by the defendant, the Court cautions the United States regarding the proposed testimony in paragraph 12 of the declaration, in which Dr. Liedtka intends to testify that TO-MOR-GONE is a drug under 21 U.S.C. § 321(g). [Record No. 48-3, ¶ 12] That issue should be left to the jury. An expert's opinion may embrace the ultimate issue to be determined by the trier of fact. Fed. R. Evid. 704(a). However, the ultimate issue must be a factual one. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). An opinion such as that expressed in paragraph 12 would usurp the role of the jury in applying the law to the facts before it. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323 (S.D. Fla. 2010) (warning that expert testimony regarding violations of the FDCA might usurp the role of the court in instructing the jury on the law or the role of the jury in applying the law to the facts of the case). The Court will entertain any objection raised concerning this issue at trial.

to better understand the intended use and the composition of certain products manufactured and distributed by the defendant. *See* Fed. R. Evid. 702(a). [Record No. 48-3, ¶¶ 9, 12−17]

Second, Girod asserts that Dr. Liedtka's proposed testimony in paragraphs 9, 10, and 12 through 19 should be excluded as irrelevant or unduly prejudicial because no drugs or escharotic agents were found during the FDA's investigation. [Record No. 59, pp. 1−2] This argument may also be viewed as an allegation that her proosed testimony is not based on sufficient facts or data. *See* Fed. R. Evid. 702(b). In reality, however, Girod is simply arguing about the weight of the evidence—a determination that should be left to the jury. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 391 (6th Cir. 2000).

For example, the analyses referenced by Girod do not purport to operate under the definition of "drug" found in the FDCA. [*See* Record Nos. 45-1; 45-2.] Under the FDCA, not only is a drug an article officially recognized as such, but it also includes "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" and "articles (other than food) intended to affect the structure or any function of the body." 21 U.S.C. § 321(g)(1)(B), (C). Dr. Liedtka's opinion testimony will help the trier of fact understand those latter two definitions. [*See, e.g.*, Record No. 48-3, ¶ 11.]

Further, while certain alkaloids and compounds were not detected in the products analyzed, the reports reveal that some alkaloids present in bloodroot were found in Girod's products. [Record No. 45-2, p. 2] Bloodroot is often found in escharotic agents.[6] As a result, Girod is actually disputing the weight and meaning of the evidence. "*Daubert* requires only

---

6  *See* David S. Senchina et al., *Bloodroot (*Sanguinaria canadensis L., Papaveraceae*) Enhances Proliferation and Cytokine Production by Human Peripheral Blood Mononuclear Cells in an* In Vitro *Model*, 15 J. HERBS SPICES MED. PLANTS 45 (2009), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2811966/

scientific validity for admissibility, not scientific precision." *United States v. Bonds*, 12 F.3d 540, 558 (6th Cir. 1993); s*ee also Daubert*, 509 U.S. at 590 ("Of course, it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science."). The expert's opinion regarding bloodroot is relevant for determining whether Girod's products contained an escharotic agent.

Moreover, Dr. Liedtka's proposed testimony is not unduly prejudicial under Rule 403. Essentially, Girod takes issue with her long discussion of the dangers of escharotic agents. [Record No. 59, p. 1, *referring to* Record No. 48-3, ¶¶ 13−20] However, because the aforementioned analyses indicate that an escharotic agent may have been present in Girod's products, such testimony is highly relevant for the jury's determination regarding inadequate warnings and labeling of the TO-MOR-GONE product. [*See, e.g.*, Record No. 48-3, ¶¶ 18−19] On cross-examination, Girod may question the expert regarding the support or basis for her conclusion that bloodroot was present in some of the products. *See Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 180 (6th Cir. 2009) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (internal quotation marks and citation omitted). Dr. Liedtka's general discussion of escharotic agents will not mislead the jury regarding the presence of an escharotic agent in the particular products at issue. *See* Fed. R. Evid. 403.

### IV.

Dr. Liedtka's proposed opinions concerning the labeling and intended use of Girod's products, the compounds found in bloodroot, and the dangers of escharotic agents are relevant and not unduly prejudicial under Rules 401−03 of the Federal Rules of Evidence. In addition,

- 9 -

she is qualified and her proposed testimony is relevant and reliable under Rule 702 and the Supreme Court's decision in *Daubert*. Accordingly, it is hereby

**ORDERED** that Defendant Samuel Girod's motion *in limine* to exclude the opinion testimony of Dr. Jane E. Liedtka at trial [Record No. 59] is **DENIED**.

This 22nd day of June, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge