UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 15-087-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 5: 19-210-DCR |
| V. ) | |
| ) | |
| SAMUEL A. GIROD, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Samuel Girod, a self-described Amish farmer, manufactured and sold in interstate commerce products called Chickweed Healing Salve, TO-MOR-GONE, and R.E.P. Following a three-day trial beginning February 27, 2017, a jury convicted him of various offenses, including failing to register with the Food and Drug Administration, introducing misbranded drugs into interstate commerce, witness tampering, and failing to appear. He was sentenced to 72 months' imprisonment, to be followed by three years of supervised release. [Record No. 141] The United States Court of Appeals for the Sixth Circuit affirmed the conviction on appeal.

Girod has now filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2555 and the Court has performed a preliminary review of the motion in accordance with Rule 4 of the Rules Governing 2255 Proceedings. Because it plainly appears that Girod is not entitled to relief, this collateral proceeding will be dismissed.

**I.**

A federal grand jury indicted Girod in October 2015, charging him with eight counts of introducing misbranded products into interstate commerce in violation of 21 U.S.C. §§ 331(a) and 333(a)(2); one count of failing to register with the Food and Drug Administration ("FDA") in violation of 21 U.S.C. §§ 331(p) and 333(a)(2); one count of conspiring to prevent FDA officers from discharging their duties in violation of 18 U.S.C. § 372; and one count of witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A). Girod retained attorney Charles McFarland prior to his initial appearance on November 2, 2015. However, McFarland filed a motion to withdraw on April 9, 2016, reporting that Girod had terminated the attorney-client relationship. Girod advised McFarland that he would be representing himself going forward and requested that McFarland withdraw from the case as soon as possible. [Record No. 43]

A United States Magistrate Judge scheduled a hearing on McFarland's motion to withdraw, and Attorney Michael Fox appeared as court-appointed stand-by counsel. The Court suggested that Girod take several days to consider self-representation, and offered to conduct an additional hearing at a later date, but Girod insisted on proceeding with his decision that day. The Court then recessed for an hour, during which time Girod met with attorney Fox regarding his desire to proceed *pro se*.

> Upon reconvening, the magistrate judge conducted a *Faretta* hearing, in which he asked whether Defendant had legal training, whether he had represented himself in a criminal proceeding before, whether he understood the charges against him and the serious penalties he faced if convicted, whether he understood that the Court could not assist him at trial, and whether he understood the various Federal Rules and that the Court would be under no obligation to relax application of the Rules to a *pro se* defendant, among many other questions. The Court, referencing all phases of the case (discovery, trial, sentencing, if applicable), also warned Defendant about the disadvantages of representing himself.

[Record No. 46]. *See Faretta v. California*, 422 U.S. 806 (1975).

The magistrate judge determined that Girod "[knew] what he was doing in choosing to proceed *pro se* and made his decision with his 'eyes wide open' to the consequences and alternatives." The Court, however, strongly cautioned Girod that his decision to represent himself was a "poor calculation." Despite Girod's objection to the appointment of stand-by counsel, the Court appointed attorney Fox in that limited role. [Record No. 46]

Girod then proceeded with a series of frivolous filings, mostly based on "sovereign citizen" arguments. These filings included a motion to dismiss the indictment, which the Court denied on June 24, 2016. [Record No. 70] Girod promptly filed a notice of appeal from the non-appealable order. And when Girod did not attend a status conference on August 26, 2016, the Court issued a warrant for his arrest. Girod remained a fugitive until he was eventually taken into custody on January 12, 2017. His bond was revoked and a jury trial was scheduled for February 27, 2017.

The federal grand jury returned a superseding indictment on February 2, 2017, which charged Girod with failing to appear at the status conference in violation of 18 U.S.C. § 3146(a)(1) in addition to all of the previous charges. [Record No. 90] Girod was arraigned on the superseding indictment on February 6, 2017. Despite the Court's repeated admonishment about the perils of proceeding *pro se*, Girod reaffirmed his desire to represent himself. [Record No. 107, p. 4] Noting that the case had changed slightly due to the addition of the failure to appear charge, the Court asked the defendant whether he needed additional time to prepare for trial. Girod responded that he did not. *Id.* at p. 10.

Despite his earlier assertion to the contrary, Girod moved for a continuance on February 17, 2017, stating that he needed additional time to "come up to speed as how to handle a jury trial." [Record No. 102] The Court denied this motion, noting that Girod's steadfast desire to represent himself could not be used to disrupt or manipulate the trial process. [Record No. 103]

During a pretrial conference on February 22, 2017, Girod requested a continuance of 90 days in which to learn how to conduct a jury trial. [Record No. 106, p. 8, 10] The government objected to the request, noting that there had already been numerous continuances and prejudice to the government would be severe if the request were granted since it had already made accommodations for several witnesses to travel from out of state to attend the trial. After considering all of these concerns and the straightforward nature of the new charge, the Court denied Girod's oral motion for a continuance.

A jury trial commenced on February 27, 2018. The government's first witness was Nicholas Paulin, a consumer safety officer with the FDA. [Record No. 133, p. 109] Upon conclusion of the government's questioning of Paulin, the following exchange took place in the presence of the jury:

> The Court: Mr. Girod, you may question the witness.
>
> Defendant Girod: Your Honor, I asked him to cross-examine him a little bit.
>
> The Court: All right.
>
> Defendant Girod: Asked Michael Fox.
>
> The Court: Is he taking over the case at this point, Mr. Girod?
>
> Mr. Fox: Judge, it's my understanding at this point he's asked me to cross-examine this witness.

>    Defendant Girod: This part right here.
>
>    The Court: All right. Any objection to this procedure?
>
>    Assistant U.S. Attorney Smith: No, Your Honor.

*Id.* at p. 158.

Attorney Fox then proceeded to cross-examine Paulin. Later, outside the jury's presence, the attorneys for the United States sought clarification regarding the role of stand-by counsel and the parties were instructed to brief the issue of hybrid representation. *Id.* at p. 194. The following morning, Girod affirmed his desire to proceed *pro se*, but requested that stand-by counsel be permitted to take over certain parts of the case. Girod reasoned that he was "not an arguing man," had "never argued points like this." [Record No. 134, p. 10]

The Court advised Girod that there was no right to hybrid representation and the Court would not allow it in this case. The Court noted that Girod had prevented Fox from getting involved in the case, so having him take over portions of the trial would likely confuse the jury and would not be beneficial to him. Accordingly, Girod was advised that he would have to make any presentations to the jury, including the questioning of witnesses. However, Girod was allowed to consult with Fox as stand-by counsel. Girod acknowledged that he had been cautioned many times about proceeding *pro se*, but made a knowing and voluntary decision to represent himself. *Id.* at p. 11.

## II.

"To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the . . . jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).

The Court conducts a preliminary review of the motion pursuant to Rule 4 of the Rules Governing § 2255 cases.

### A. Lack of a Swiss German Interpreter

For the first time, Girod claims that he speaks primarily the Amish dialect of Swiss German and that he has limited proficiency with the English language. Accordingly, he argues, the Court's failure to appoint a Swiss German interpreter violated his rights to a fair trial and due process under the Sixth and Fifth Amendments to the United States Constitution.

The United States Supreme Court has not recognized a constitutional right to a court-appointed interpreter. *Nguyen v. Booker*, 496 F. App'x 502, 506 (6th Cir. 2012). However, when a defendant's fluency in English is "so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions," other constitutional rights may require appointment of an interpreter. *Riley v. Paramo*, No. EDCV 17-02266, 2018 WL 4223763 (C.D. Cal. July 19, 2018) (quoting *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986) (collecting cases)).

The Court Interpreters Act ("CIA"), 28 U.S.C. § 1827, provides that courts shall utilize the services of an interpreter when the defendant in a criminal case "speaks only or primarily a language other than the English language." § 1827(d)(1)(A). Girod claims that he was entitled to an interpreter under the CIA because he "has never spoken, read, or understood any other language, other than German/Swiss during his daily living and activities, at ANY time during his entire life, prior to the start of this case against him." [Record No. 155-1, p. 1] However, "primarily," as used in the CIA does not mean the language the defendant has spoken most frequently. *United States v. Hasan*, 526 F.3d 653, 666 (10th Cir. 2008). Instead, the

Court must assess the defendant's comparative command of the English language. *Id.* In other words, can he communicate in English?

The answer in this case clearly is yes. Throughout the proceedings, Girod displayed a strong command of the English language. His numerous *pro se* filings were written in English. And although he conceded that his son assisted him in drafting several documents, he reported that he read and understood them. [Record No. 133, p. 193] Girod consistently answered questions without hesitation, and acknowledged having read court documents written in English. [Record No. 107, p. 3] He examined various witnesses, performing a relatively sophisticated cross-examination of FDA dermatologist Jane Liedtka, M.D., during which he questioned her about the results of FDA testing on bloodroot products. [Record No. 134, pp. 43-53] He also made specific (yet misplaced) objections to the government's proof. [Record No. 134, pp. 43, 96, 115, 120, 126, 130]

Girod took the stand in his own defense and provided extensive testimony by responding to questions that he had prepared in advance. [Record No. 135, pp. 12-31] And he made a lengthy closing argument, explaining his interest in herbs and how he began making the products at issue. [Record No. 135, pp. 66-67] Girod then summarized some of the evidence and reviewed the written jury instructions, explaining to the jury why the government had failed to satisfy certain elements. *Id.* at pp. 70-76.

While Girod indicated at times that he did not fully understand the proceedings, it is clear that he was referring to legal issues—not his ability to understand English. [Record Nos. 106, p. 13; 107, p. 8] A layperson, regardless of his proficiency in any particular language, will not understand the intricacies of criminal trial process the same way as a trained attorney.

This is why the Court repeatedly admonished Girod to utilize the assistance of counsel. However, he had a constitutional right to represent himself, and he insisted upon doing so.

Girod's claims that he "never understood what was happening" and needed help that "would not come" are plainly refuted by the record. [Record No. 155-1, p. 10] As the Court advised Girod repeatedly, attorney Fox was available throughout the trial to consult with him concerning trial procedures and legal terminology. [Record Nos. 106, p. 19; 110, p. 12] To the extent Girod did not consult with Fox on particular matters, that refusal was his own choice. Girod's assertion that he has a limited understanding of the English language is not only disingenuous, *it is belied completely by his conduct throughout this proceeding*.

### B. Right to Assistance of Stand-by Counsel

Girod also contends that the limitations imposed upon his ability to utilize stand-by counsel during trial resulted in violations of his rights to due process and a fair trial. But as the Court explained during trial, there is no right to appear both *pro se* and through counsel. *See United States v. Steele*, 919 F.3d 965, 975 (6th Cir. 2019). Girod objected to the appointment of stand-by counsel and unequivocally waived his right to counsel at every juncture of the proceedings. Accordingly, he was not entitled to have stand-by counsel question witnesses or make any other presentations to the jury.

Girod's intent is further exemplified by his conduct before the Sixth Circuit. Shortly after filing his Notice of Appeal following entry of Judgment in the case, Girod filed a "Notice and Demand" to proceed *pro se*, indicating that the Court could not "force" counsel upon him. [Record No. 144, p. 2] Notwithstanding that filing, the Sixth Circuit provisionally appointed counsel to assist Girod with filing an application to proceed *in forma pauperis*, completing the transcript order form, and "advising Girod of the difficulties of proceeding *pro se* on direct

criminal appeal." [Record No. 150, p. 2] Girod filed an additional "Notice and Demand" to proceed *pro se* the following day. The Sixth Circuit received additional correspondence from Girod on September 14, 2017, stating, "I neither want nor need the services of [provisionally-appointed counsel]. . . . My wishes have been made quite clear, on more than one occasion." [No. 17-5795 (6th Cir.), Record No. 17] Counsel was permitted to withdraw after completing the terms of provisional appointment.

Girod's assertion that he believed he was not permitted to consult with stand-by counsel is simply false and the record demonstrates the disingenuousness of this claim. Following the Court's ruling on hybrid representation, Girod had off-the-record discussions with stand-by counsel on numerous occasions. [Record Nos. 134, p. 159; 135, pp. 8, 31, 42] While Girod may regret his decision to proceed *pro se* based on 20/20 hindsight, this regret does not entitle him to relief under § 2255. And to the extent Girod claims he received ineffective assistance of counsel, he is precluded from bringing such a claim since he represented himself. *See Faretta*, 422 U.S. at 834 n.46. It bears repeating that this Court *repeatedly* advised Girod of the perils of self-representation, but he was not persuaded to accept the assistance of counsel. Girod must now live with the consequences of his decision.

### C. Request for Hearing and Appointment of Counsel

Girod has requested a hearing and the appointment of counsel. However, a hearing is not required when "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). For all of the reasons stated herein, "the motion and files

and records of the case show conclusively" that the Girod is not entitled to relief. *See* 28 U.S.C. § 2255.

Additionally, there is no constitutional right to counsel in habeas proceedings. *Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005). Instead, the Court exercises discretion in deciding whether counsel should be appointed. *United States v. Lundy*, No. 6: 08-02-DCR, 2011 WL 13277903, at *1 (E.D. Ky. June 17, 2011). The appointment of counsel in this proceeding is unnecessary because it is clear from the record that Girod's § 2255 motion is baseless and should be dismissed.

### D. Certificate of Appealability

Before an appeal can proceed, Girod must obtain a Certificate of Appealability. 28 U.S.C. § 2253. Although a circuit judge can issue a Certificate of Appealability, the district acts as the initial decisionmaker. *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997). To obtain a Certificate of Appealability, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Here, as the Court observed (and as the record plainly shows), Girod was proficient in the English language and could not have suffered any constitutionally-recognized harm as a result of the absence of an interpreter. Additionally, there is no right to hybrid representation. Girod cannot fault the Court, opposing counsel, or his stand-by counsel for the results of his knowing and voluntary decision to represent himself in this matter. The Court concludes that reasonable jurists would not find these conclusions to be debatable. Accordingly, a Certificate of Appealability will be denied.

**III.**

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1. Defendant/Movant Samuel Girod's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Record No. 155] is **DENIED**.

2. This collateral proceeding is **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

3. A Certificate of Appealability shall not issue.

Dated: May 22, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge